UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ROBERT PERRIN, ET AL.                    *        CIVIL ACTION

versus                                   *        NO. 07-2878

EXPERT OIL AND GAS, LLC                  *        SECTION "F"

ORDER AND REASONS

Before the Court is plaintiffs' motion to certify a class,

pursuant to Rule 23(b)(3), composed of:

> Crabbers who fish for crabs in the Louisiana
> Department of Wildlife and Fisheries Areas
> 203, 209 and 211 have suffered a loss of
> equipment, past earnings and future earnings
> as a result of damage to their equipment and
> damage to the crab populations [and]

> Shrimpers who shrimp in the Louisiana
> Department of Wildlife and Fisheries Areas
> 203, 209 and 211 have suffered a loss of
> equipment, past earnings and future earnings
> as a result of damage to their equipment and
> damage to the shrimp populations.

For the reasons that follow, the plaintiffs' motion to certify

is DENIED.

Background

On the evening of January 20, 2007, the M/V CATHY M. SETTOON,

owned by Settoon Towing, struck the SW 18748#1 well, owned and

operated by ExPert Oil and Gas in Bayou Perot, Louisiana.[1]   As a

_____

[1] ExPert contends that this incident was a "hit and run"; the
CATHY M. SETTOON fled the area following the allision and failed to

1

result, over the course of four days, 80,000 gallons of crude oil was spilled from the wellhead into Bayou Perot.[2]

The plaintiffs sued ExPert in state court, asserting that the oil spill polluted privately owned land; coated and damaged fishing, crabbing, and shrimping equipment in the waterways; and damaged the crab, shrimp, and fish populations in the waterways. The plaintiffs assert that they sustained damage as a result of the oil spill and that the defendant is also liable for its negligence in failing to properly mark or maintain the well.

ExPert removed the suit to this Court, invoking this Court's federal question jurisdiction, because some of the plaintiffs' claims arise under the Oil Pollution Act, 33 U.S.C. § 2714. ExPert has filed a third-party complaint against Settoon Towing, asserting that the tug CATHY S. SETTOON's negligence and unseaworthiness caused the allision that resulted in the oil spill.   Plaintiffs recently have abandoned their request for certification for the putative subclasses of property owners and fin fisherman. Accordingly, the plaintiffs now move to certify two subclasses, composed of:

Crabbers who fish for crabs in the Louisiana

---

report that it had allided with ExPert's wellhead until over a month after the incident.

   [2] The plaintiffs assert that the oil spill "spread throughout Bayou Perot and its adjacent lands, westward to Lake Salvador, eastward to Bayou Rigolettes, southward to Little Lake and further south to Barataria Bay."

> Department of Wildlife and Fisheries Areas
> 203, 209 and 211 have suffered a loss of
> equipment, past earnings and future earnings
> as a result of damage to their equipment and
> damage to the crab populations [and]
>
> Shrimpers who shrimp in the Louisiana
> Department of Wildlife and Fisheries Areas
> 203, 209 and 211 have suffered a loss of
> equipment, past earnings and future earnings
> as a result of damage to their equipment and
> damage to the shrimp populations.

## I.  Rule 23

Rule 23 of the Federal Rules of Civil Procedure governs class actions.  In ruling on class certification, the Court has broad discretion to certify a class; the issue is whether the requirements of the Rule are met, not whether the plaintiffs have stated a cause of action.  General Telephone Co. V. Falcon, 457 U.S. 147, 161 (1982).  Nevertheless, a ruling on class certification is a fact-specific determination and thus the Court may look past the pleadings to the record and any completed discovery to make the determination as to whether the Rule 23 prerequisites are met.  Id.; Spence v. Glock, 227 F.3d 308, 310 (5th Cir. 2000).

Rule 23(a) sets forth four threshold requirements to any class action:  (1) a class "so numerous that joinder of all members is impracticable"; (2) the existence of "questions of law or fact common to the class"; (3) class representatives with claims or defenses "typical . . . of the class"; and (4) class

representatives that "will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a).

If the Rule 23(a) criteria are satisfied, a party seeking class certification under Rule 23(b)(3) must also demonstrate that "questions of law or fact common to the members of the class predominate over any questions affecting only individual members" and that the class action is "superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).  Together, subsections (a) and (b) of Rule 23 insure that the proposed class has "sufficient unity so that absent class members can fairly be bound by decisions of the class representatives." See Amchem, 521 U.S. 591 (1997).

The plaintiffs bear the burden of establishing that all of the Rule 23 criteria are met.  Unger v. Amedisys Inc., 401 F.3d 316, 320 (5th Cir. 2005).  To determine whether plaintiffs have met their burden on Rule 23 issues, the Court must conduct a "rigorous analysis" of all "'claims, defenses, relevant facts, and applicable substantive law.'"  O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir. 2003); Allison, 151 F.3d 402, 419 (5th Cir. 1998).

Mindful of the plaintiffs' burden on class certification, and considering the fact-specific rather than class-oriented nature of the character of the claims asserted, the Court finds that class certification is inappropriate and fails the standards required by

Rule 23(b)(3).[3]

## II. Rule 23(b)(3): Predominance and Superiority

### A.

Rule 23(b)(3) demands that the class satisfy pivotal predominance and superiority. See Amchem, 521 U.S. 591 (1997). The Rule announces a subset of four inquiries that define predominance and superiority:

> (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Fed. R. Civ. P. 23(b)(3).

Much attention has focused on the tension between the individualized nature of the claims asserted as contrasted with Rule 23(b)(3)'s insistence upon predominance.  Predominance is a rather unforgiving standard.  Predominance is "more demanding than

---

[3] Because plaintiffs most conspicuously fail to satisfy the requirements of Rule 23(b)(3), the Court need not reach whether plaintiffs satisfy the prerequisites of Rule 23(a).  But the Court notes that, while the Rule 23(a) requirements are often considered less than strenuous, the record here convinces that the putative class would be challenged to meet even these threshold requirements.  For example, as to the numerosity requirement, the fact that the number of shrimpers and crabbers affected by the spill (127 and 43, respectively) are an easily identifiable group of people residing and working in close proximity, would caution against a finding of numerosity.

the commonality requirement of Rule 23(a)."  Bell Atl. Corp. v.

AT&T Corp., 339 F.3d 294, 301-02 (5th Cir. 2003).[4]  It calls for an

imbalance that tilts to the class.  It requires "that questions

common to the class members predominate over questions affecting

only individual members."  Id. at 301.  The Bell Atlantic Court

takes a utilitarian approach:

> [d]etermining whether the plaintiffs can clear
> the predominance hurdle set by Rule
> 23(b)(3) . . . requires [courts] to consider
> "how a trial on the merits would be conducted
> if a class were certified." . . . This, in
> turn, "entails identifying the substantive
> issues that will control the outcome,
> assessing which issues will predominate, and
> then determining whether the issues are common
> to the class," a process that ultimately
> "prevents the class from degenerating into a
> series of individual trials."

Id. at 302 (internal citations omitted).

---

[4] Rule 23(a)(2) instructs that there be issues of law or fact
common to the class.  The commonality requirement is satisfied if
at least one issue's resolution will affect all or a significant
number of class members.  See James v. City of Dallas, 254 F.3d
551, 570 (5th Cir. 2001); Mullen v. Treasure Chest Casino, LLC, 186
F.3d 620, 625 (5th Cir. 1999).  There is a low threshold for
commonality, and the fact that some plaintiffs have different
claims or require individualized analysis does not defeat
commonality.  James, 254 F.3d at 570.  But the analysis does not
stop there because Rule 23(b)(3) mandates that common questions of
law or fact must also "predominate over any questions affecting
only individual [class] members." Unger, 401 F.3d at 320.  This is
the doctrinal test of cohesion, and it is demanding.  To
predominate, common issues must form a significant part of
individual cases.  Mullen, 186 F.3d at 626.  The predominance
requirement of Rule 23(b)(3) is "far more demanding" than the
commonality requirement of Rule 23(a), because it "tests whether
proposed classes are sufficiently cohesive to warrant adjudication
by representation."  Unger, 401 F.3d at 320.

One must add that superiority requires that class actions "be superior to other available methods for the fair and efficient adjudication of the controversy." Amchem, 521 U.S. at 615 (internal quotations omitted).   Superiority, important and an imperative, seems however not as demanding a part of the equation.   So the Court examines predominance first.

B.

"A class should be certified on a claim-by-claim basis." Bertulli, 242 F.3d 290, 295 (5th Cir. 2001).   The Court must study each claim separately to decide "whether common issues predominate and whether the class action is the superior method to resolve the controversy [because the Rule] requires an understanding of the relevant claims, defenses, facts, and substantive law presented in the case."   In re Am. Commercial, 2002 WL 1066743, at *12 (E.D. La. May 28, 2002) (Engelhardt, J.) (citing Castano v. Am. Tobacco Co., 84 F.3d 734, 744 (5th Cir. 1996)).

As noted, to determine whether plaintiffs have met their burden on Rule 23 issues, the Court, again, is instructed to conduct a "rigorous analysis."   O'Sullivan v. Countrywide Home Loans, Inc., 319 F.3d 732, 738 (5th Cir. 2003).   Rule 23(b)(3) insists that common questions of law and fact predominate over questions affecting only individual members.[5]   In considering

---

[5] Unlike proposed (b)(2) classes, where "uniform group remedies" may be awarded without regard to "time-consuming inquiries into varying circumstances and merits of each class

predominance, the Court should "identify[] the substantive issues that will control the outcome, assessing which issues predominate, and then determine whether the issues are common to the class." Id.  Thus, it is appropriate for the Court to look beyond the pleadings to "understand the claims, defenses, relevant facts, and applicable substantive law."  Id.  (The Court conducted a close examination on those questions at oral argument).

Even assuming that the plaintiffs could meet the four requirements of Rule 23(a), as the Court is prepared to do for the purposes of this motion, they have not met their burden under Rule 23(b)(3).  The express language of the Rule mandates that common questions of law or fact predominate; that is, some commonality will not suffice; a little commonality is not enough.  While the issue of liability is perhaps common to the class, the predominance of individual issues necessary to decide causation, the appropriateness of defenses as against plaintiffs, and the plaintiffs' injuries and damages, as well as concerns regarding the superiority of the class action device in this context, precludes

member's individual case[,]" (b)(3) classes must "withstand a court's independent probe into the superiority of the class action over other available methods of adjudication or the degree to which common issues predominate over those affecting only individual class members" Allison, 151 F.3d at 414.  Thus, a manageability (and predomination of common issues) restriction is imposed on considerations for proposed (b)(3) classes. Allison says that the predomination requirement of (b)(2) serves the same function (including preserving the legal system's interest in judicial economy) as the procedural safeguard and efficiency and manageability standards mandated in (b)(3) classes. Id. at 414-15.

certification under (b)(3).

III.

The Court must determine whether the plaintiffs have met their burden of showing that their negligence claim could be tried in a class-wide trial.[6]

To prove negligence, plaintiffs must establish fault, causation, and damages.  The plaintiffs claim that ExPert is at fault for the oil spill, that the oil spill infiltrated portions of areas where the plaintiffs shrimp and crab, and that they were damaged by the loss of their equipment and the loss of present and future earnings.  While the issue of whether ExPert or Settoon (or both) are culpable for the oil spill is at first blush a common question, the plaintiffs have failed to even suggest how they would prove the other elements of their claim on a class-wide basis.[7] Putting aside the arguably common issue of liability, the remaining elements of the claims (causation and damages) require scrutiny of varying individual factors, such as:

1.    The "portions" of areas 203, 209, and 211 in which the

---

[6] Plaintiffs also assert claims under the Oil Pollution Act, 33 U.S.C. § 2714, and Louisiana's Oil Spill Prevention and Response Act, La.R.S. 30:2482.

[7] The record sheds no light.  Robert Perrin's affidavit, for example, states only that he has been a licensed crabber for 20 years; that he has commercially crabbed in Louisiana Department of Wildlife and Fisheries areas 203, 209, and 211 for 20 years; and that he has been unable to crab in *portions* but not all of those areas since the oil spill.  Neither plaintiffs' papers or arguments address the inadequacy of the record.

putative class members have been unable to crab or shrimp;

2.   The number of days based on historical data in which the putative class members would have shrimped or crabbed in "portions" of areas 203, 209, and 211;

3.   Whether any putative class member actually sustained any loss of net profits as a result of the alleged inability to shrimp or crab in "portions" of areas 203, 209, and 211;

4.   The general availability of alternative shrimping or crabbing locations unaffected by the spill on the days in question;

5.   Whether any factors other than the oil spill caused or contributed to the loss of any shrimping or crabbing days, such as injury, illness, mechanical problems, damage to nets or traps, weather issues;

6.   Whether the individual profitability of each claimant was affected by factors unrelated to the oil spill, such as increased fuel costs, equipment costs, rising or falling market prices for shrimp or crabs, weather issues;

7.   Efforts, if any, by individual claimants to mitigate or eliminate their damages, including the utilization of other waterways not affected by the spill, replacement or cleaning of crab traps or equipment affected by the spill so they could be used in unaffected waterways.

The plaintiffs have not addressed how these issues could be addressed on a class-wide basis.

Indeed, ExPert insists (and the Court agrees) that this, like most "single incident" or "mass accident" cases,[8] is not suited for

---

[8] In <u>Steering Committee v. Exxon Mobil Corp.</u>, 461 F.3d 598 (5th Cir. 2006), the Fifth Circuit noted that when causation, injury, and damages issues predominate over a common, straightforward issue of liability, class certification is doomed.  The Fifth Circuit also paid a heavy respect to the following advisory committee note to Rule 23(b)(3), which provides:

> A "mass accident" resulting in injuries to numerous persons is ordinarily not appropriate for a class action because of the likelihood that significant questions, not only of damages but of liability and defenses to

class treatment because

> Each individual shrimper or crabber
> must show his individual utilization
> of the affected geographic area.
> Each claimant must show his
> individual efforts to mitigate his
> damages and why the availability of
> adjacent, unpolluted waterways was
> not a suitable alternative for
> shrimping or crabbing. Each
> claimant will need to demonstrate
> his individual gross revenues and
> cost structure, and each claim will
> need to be evaluated for intervening
> or supervening causes for the
> alleged lost of net profits,
> including weather, increased costs
> reducing profits, mechanical
> problems, problems related to
> fishing equipment, illness or other
> personalized reasons for each
> claimant's purported inability to
> earn a net profit....

The plaintiffs counter that individualized damages inquiries often do not automatically obstruct class certification. That is true. However, "where," as here, "an individual's damages cannot be determined by reference to a mathematical or formulaic calculation," the Fifth Circuit points out that "the damages issue

---

> liability would be present, affecting the
> individuals in different ways. In these
> circumstances an action conducted nominally as
> a class action would degenerate in practice
> into multiple lawsuits separately tried.

The Court echoes the Fifth Circuit's determination in Steering
Committee that plaintiffs "have not demonstrated that this mass
tort has any exceptional features that warrant departing from the
general rule and treating it as a class action." Id. at 604.

may predominate over any common issues shared by the class."
Steering Committee v. Exxon Mobil Corp., 461 F.3d 598, 602 (5th Cir.
2006) (citations omitted).[9]  Putting aside the individualized
inquiries that proving causation focus, the plaintiffs have not
suggested how their claims for compensatory damages and loss of
future earnings would focus on the class as a whole as opposed to
facts and issues specific to the individual crabbers and shrimpers.
And the present record defies any such suggestion. Indeed, the
nature of the alleged damages implicates the subjective differences
of each plaintiff's circumstances, rather than calling for a class-
wide remedy.  See Allison, 151 F.3d 402, 417 (5th Cir. 1998).

Because individual issues predominate over the only arguably
common issue of liability, the plaintiffs have failed to carry
their burden.  The Court is not persuaded that, on this record, a
class-wide trial is proper under the Rule.  And the plaintiffs'
failure to show that class treatment would be superior is fatal.

Plaintiffs utterly fail to even suggest how the class action
device is superior to other available methods of adjudication.  To
satisfy Rule 23(b)(3)'s superiority requirement, plaintiffs must
show that the case can be manageably tried.  Castano, 84 F.3d at
743-45.  A finding of fault on the part of ExPert or Settoon is a
minor part of the case, and just the beginning.  Thereafter, the

---

[9] At oral argument, plaintiffs' counsel speculated that a
formula could be developed, but offered no credible explanation or
documents to support their patent speculation.

Court would be inevitably confronted with a series of mini-trials addressing the more involved individualized issues of proximate cause, injury-in-fact, and damages.[10]

Accordingly, the plaintiffs' motion to certify class is DENIED.

New Orleans, Louisiana, February 6, 2008.

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE

_____

[10] The plaintiffs offer no proposal to efficiently manage that inevitability, and the Court is "under no obligation to *sua sponte* consider other variations [of the trial plan, such as bifurcation] not proposed by any party." See Steering Committee, 461 F.3d at 603-04. The Court notes that, at the class certification hearing, counsel for plaintiffs hinted that a formula for calculating damages potentially could be developed. Counsel submitted a Louisiana Department of Wildlife and Fisheries Dealer Receipt form and invoked La.R.S. 56:306.6, which provides, in part:

> Each wholesale/retail seafood dealer shall on or before the tenth of each month make a return to the department of all commercial receipt forms representing actual transactions from every commercial fisherman during the preceding month. All commercial receipt forms submitted by a dealer shall be accompanied by a monthly submission sheet signed by the wholesale/retail seafood dealer certifying that the transactions submitted represents all of the transactions by that dealer from commercial fishermen for that particular month.

Plaintiffs' counsel suggested that the state statutory requirement that shrimpers and crabbers have monthly receipt forms renders the damages calculation formulaic. The Court disagrees. The form receipt reflects nothing but gross value of that periodic catch; and neither the statute nor the receipt form mandate or infer a solution to the problem.